**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Christopher ALSOP, Defendant—
Appellant.**

No. 99–3983.

United States Court of Appeals,
Sixth Circuit.

April 12, 2001.

Before MERRITT, NELSON, and SUHRHEINRICH; Circuit Judges.

PER CURIAM.

Defendant Christopher Alsop appeals his conviction and sentence for conspiracy to distribute cocaine and multiple counts of distribution of cocaine. Defendant was indicted on October 21, 1998, in a four-count indictment for conspiracy to distribute cocaine base (crack) pursuant to 21 U.S.C. § 846, and for unlawful distribution of crack cocaine pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and (b)(1)(B)(iii). Defendant pleaded not guilty. During the trial, the Government introduced the testimony of co-operating witnesses and several tape recordings of drug transactions and arrangements for drug transactions. After conviction by a jury, Defendant moved for acquittal and a new trial, which the court denied. Defendant was sentenced to thirty years in prison followed by ten years of supervised release on each count, to run concurrently, and fined $100,000. Defendant raises six issues on appeal. We AFFIRM.

### A. Inaudible Audio Tapes

Defendant contends that the certain of the tape recordings are not audible or sufficiently comprehensible. The deci-

sion to admit tape recordings into evidence rests with the sound discretion of the district court judge. *United States v. Reed,* 647 F.2d 678, 688 (6th Cir.1981). The admission or exclusion of evidence is reviewed for an abuse of discretion. *United States v. Sivils,* 960 F.2d 587, 597 (6th Cir.1992).

In this case, Defendant moved in limine to exclude certain audio tapes as inaudible. At the hearing, Defendant's counsel stated that he had listened to the challenged tapes and could understand them but that Defendant, his client, wanted to suppress the tapes as inaudible. The court ruled that the tapes could be played for the jury. Later, the court reaffirmed its ruling: "[A]s I ruled pretrial, I would affirm that ruling now. And after having once again listened to the tapes as it was [sic] presented here to the jury, it would be my judgment that the jury can adequately understand the tapes and will admit them as legal evidence in the case."

Defendant also argues that his 'speech is difficult to understand. However, at sentencing the court found: "The Court also wishes to note for the record that it was able to understand Mr. Alsop when he talked, and wished the Court (sic) to understand that the Court could clearly understand what he was saying." Furthermore, at the oral argument of the appeal, counsel for Defendant indicated that he would have no objection to the panel's listening to the tapes on the same equipment used in playing them to the jury. We have done so, and we conclude that the district court did not abuse its discretion in allowing the jury to hear the tapes.

### B. Use of Excluded Transcripts of Admitted Audio Tapes

■ Defendant claims that the Government used excluded transcripts of admitted audio tapes to ask leading questions of its witnesses about the contents of the tapes. Defendant claims that this denied him his Fifth Amendment right to a fair trial.

Defendant did not object to the use of the transcripts. Where there is no objection below, this Court reviews for plain error. Fed.R.Crim.P. 52(b); *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Evans,* 883 F.2d 496, 499 (6th Cir.1989).

■ A district court has wide discretion in managing the questioning of witnesses. *United States v. Shoupe,* 548 F.2d 636, 641 (6th Cir.1977). A witness may comment on a recorded conversation in his own words and indicate what was said and what occurred. *United States v. Martin,* 920 F.2d 393, 397 (6th Cir.1990). A witness may also explain phrases and place them in context for the jury. *Id.* at 397–98.

During the testimony of two Government witnesses, tape recordings of telephone conversations and meetings with Defendant were admitted and played for the jury. The tapes were properly authenticated by witnesses and the police officers who made them. The Government, using transcripts of the audio tapes, asked witnesses to explain certain portions of the conversations heard by the jury. However, no transcripts of the tapes were given to the jury. We find no plain error.

### C. Reference to Defendant's Prior Incarceration

■ Defendant maintains that a Government witness's reference to his prior incarceration deprived him of a fundamentally fair trial. Defendant did not object, request a curative instruction, or timely move for a mistrial. This Court, therefore, reviews for plain error. Fed. Rule

Crim. P. 52(b); *United States v. Cunningham*, 804 F.2d 58, 63 (6th Cir.1986).

■ Relying on *United States v. Poston*, 430 F.2d 706, 709 (6th Cir.1970), and other older cases, Defendant argues for a bright line rule that an reference to a defendant's prison record is per se reversible error. However, the trend is to consider several factors in determining whether testimony is prejudicial: (1) whether a curative instruction was given, *United States v. Blakeney*, 942 F.2d 1001, 1030–31 (6th Cir. 1991); (2) whether the prejudicial testimony was an isolated incident or a significant part of the testimony, *United States v. Bowers*, 739 F.2d 1050, 1055 (6th Cir.1984); and (3) whether the government acted in bad faith or deliberately injected the comment, *United States v. Hernandez*, 873 F.2d 925, 928 (6th Cir.1989). In *United States v. Copeland*, 51 F.3d 611 (6th Cir. 1995), this Circuit affirmed a conviction where the government did not elicit the testimony and where the defendant did not object or request a curative instruction because it would emphasize the matter. The court held that not giving a curative instruction *sua sponte* under these circumstances was not reversible error.

While references to prior incarceration, jail, prison, and arrest should be avoided, mere use of these words in other circuits is not reversible error per se. *United States v. Veteto*, 701 F.2d 136, 139–40 (11th Cir. 1983) (citing *United States v. Barcenas*, 498 F.2d 1110, 1113 (5th Cir.1974)).

In this case, during defense counsel's cross-examination of a government witness about his relationship to Defendant, the witness referred to Defendant's prior incarceration stating:

Q. Now, you told the ladies and gentlemen of the jury that you had known Defendant since you were lightweights, and I like that word. That means since you were young, right?

A. Yeah.

Q. And you had seen him off and on, right?

A. Well, after he got out of the penitentiary, yeah. I started seeing him off and on, yeah.

Defense counsel did not object, request a curative instruction, or move for a mistrial at that time.

Here, the prejudicial testimony was not elicited by the Government, was limited to a single reference to a "penitentiary," and passed without objection or request for a curative instruction. A curative instruction would have emphasized and may have undermined defense counsel's strategy to ignore the remark. Further, there was ample evidence of Defendant's guilt. The district court did not commit reversible error by not issuing a *sua sponte* curative instruction.

■ Defendant also claims that the jury saw him wearing his jail bracelet and handcuffs and that this impaired his right to a fair trial. Generally, a criminal defendant should not appear before the jury in prison clothes or restraints because it may impair the due process presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). However, exposure of a defendant to a jury in restraints only requires relief when the exposure is so "inherently prejudicial" as to deny the defendant's constitutional right to a fair trial. *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir.2000) (citing *United States v. Pina*, 844 F.2d 1, 8 (1st Cir.1988)). Defendants are required to show actual prejudice where "[t]he conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial." *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.1991) (quotation omitted).

Here, several members of the jury observed Defendant wearing a jail identification bracelet in court and in handcuffs while in a hallway and elevator. The district court instructed the jurors to ignore what they saw in deciding Defendant's guilt or innocence. Furthermore, the district court permitted Defendant's counsel to examine the jurors to determine if this prejudiced them against Defendant. The jurors said that they were not prejudiced. This was an incidental viewing of a routine security measure that Defendant has not shown resulted in any prejudice. Accordingly, Defendant's claim fails.

### D. Hearsay in Taped Conversations

Defendant claims that the tape-recordings admitted at trial contained inadmissible hearsay. Defendant did not object below. Where there is no objection, this Court reviews for plain error. *Evans*, 883 F.2d at 499.

 A defendant's statements in a tape recorded conversation constitute non-hearsay admissions of a party. *United States v. McDonald*, 173 F.3d 430 (table), 1999 WL 149658 (6th Cir.1999) (collecting cases in the 1st, 2d, 5th, 7th, 9th, and D.C. Circuits). Further, an informant's side of the conversation is admissible as non-hearsay evidence, when offered to make a defendant's statements intelligible as an admission and to place them in context. Moreover, witnesses may testify to the contents of a tape recorded conversation. *Martin*, 920 F.2d at 397; *United States v. Branham*, 97 F.3d 835, 853 (6th Cir.1996).

 In this case, three sales of crack cocaine by Defendant to Dione Parker, a cooperating witness, were arranged by recorded telephone calls and tape-recorded. Further, a meeting was arranged by recorded telephone calls and tape recorded in which Kevin Daniels, another cooperating witness, paid $3,500 to Defendant for a

prior drug debt. The recorded conversations between Defendant and these witnesses are admissible because they place Defendant's statements in context and make them intelligible as admissions. Both Parker and Daniels were subject to cross-examination on the contents of the recordings.

One of the admitted tape recordings contained conversations between Daniels and passersby while Daniels was wired and waiting in a park to meet Defendant. This conversation was not prejudicial to Defendant, and Defendant also did not object to it. The district court had no duty to exclude the tape *sua sponte*.

 Another tape contained two conversations and included a statement of a police officer explaining that a caller would page Defendant with the amount of crack a buyer wanted. The statement was played inadvertently because the tape was not properly cued to the next conversation. The statement was not prejudicial because the jury had already heard Parker testify that Defendant would have Parker place the number of ounces of cocaine he wanted in Defendant's pager. Parker testified that he watched the police officer punch the number two for two ounces in Defendant's pager immediately before the complained of remark was heard by the jury. Therefore, we hold that whatever hearsay was present in the trial did not constitute plain error and was harmless.

### E. Ineffective Assistance of Counsel

 Defendant contends that he received ineffective assistance of counsel because his defense counsel did not impeach or cross-examine two key witnesses on the contents of the Government's exhibit that he claims showed that the Government witness perjured himself and that another witness was less than candid. Defendant

further contends that his defense counsel also did not object, request a curative instruction, or timely move for a mistrial based on the errors discussed above.

■ Effective assistance of counsel is a mixed question of fact and law; the standard of review is de novo. *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999).

■ The denial of effective assistance of counsel requires both deficient performance and actual prejudice that deprives a defendant of a fair trial and produces an unreliable verdict. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defense counsel's performance is presumed to be competent and part of the trial strategy. *Id.* at 689, 104 S.Ct. 2052; *see also O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.1996) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 368–71, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). Actual prejudice generally requires a showing of reasonable probability that the verdict would be different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Generally stated: "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992).

Here, defense counsel's performance was competent. He moved to exclude tapes and to secure impeachment material before trial. He also was prepared and vigorously cross-examined government witnesses. Where defense counsel did not raise possible objections, it could be attrib-

uted to reasonable trial strategy. Moreover, Defendant has not shown that defense counsel's performance prejudiced the Defendant or rendered the trial unfair or unreliable.

## F. Sufficiency of the Evidence

■ Finally, Defendant maintains that the district court erred in denying his motion for acquittal under Fed.R.Crim.P. 29(c), or alternately his motion for a new trial under Fed.R.Crim.P. 33. Defendant argues that the evidence was insufficient to support the verdict and that the verdict was against the great weight of the evidence.

■ This Court reviews insufficiency of the evidence claims by viewing the evidence in the light most favorable to the prosecution and then determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Wright,* 16 F.3d 1429, 1439 (6th Cir.1994); *United States v. Sims,* 975 F.2d 1225, 1239 (6th Cir.1992). This Court reviews claims that a verdict is against the great weight of evidence by determining whether the district court's ruling was a clear and manifest abuse of discretion. *United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988).

Defendant argues that the evidence is insufficient to support his convictions for distributing crack cocaine. "The essential elements in a violation of 21 U.S.C. § 841(a)(1) are 'for any person knowingly or intentionally to ... possess with intent to ... distribute ... a controlled substance.'" *Evans,* 883 F.2d at 501 (citations omitted).

At trial, the jury heard testimony from Parker that he obtained crack cocaine directly from Defendant on September 2 and

8, 1998, and from Defendant through Defendant's brother Robert on September 22, 1998. This testimony was corroborated by tape-recorded telephone calls, tape recordings of the meetings, and videotape of the meetings on September 8 and 22, 1998. Parker and his vehicle were searched before each meeting to make sure that he had no contraband. Parker was then surveilled to the meeting sites where he was observed meeting Defendant on September 2 and 8, 1998, and Defendant was observed picking up his brother Robert after Parker obtained the crack on September 22, 1998. Parker was then followed on each occasion to a prearranged location where he turned the drugs over to the police. Based on this evidence, any rational jury could have found that the defendant distributed crack cocaine.

■ Defendant also attacks the credibility of Parker in testifying about Defendant selling drugs. However, the credibility of a witness is immaterial in an insufficiency of evidence claim. *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.), *cert. denied,* 526 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999); *United States v. Adamo,* 742 F.2d 927, 934–35 (6th Cir.1984).

■ Defendant also claims that the evidence is insufficient to support his conviction of conspiracy to violate drug laws. The elements of a drug conspiracy are: (1) an agreement to violate the drug laws; (2) each conspirator knew of and intended to join the conspiracy; and (3) each conspirator participated in the conspiracy. *United States v. Sanchez,* 928 F.2d 1450, 1457 (6th Cir.1991); *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990). Proof of these elements may be by direct or circumstantial evidence. *United States v. Meyers,* 646 F.2d 1142, 1144 (6th Cir.1981). Further, a jury may infer agreement, knowledge, and participation in the common purpose and plan of a conspiracy based on a defendant's actions and reactions to the circumstances. *United States v. Barrett,* 933 F.2d 355, 359 (6th Cir.1991). Inferential proof is the "norm in drug conspiracy prosecutions." *United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977); *United States v. Sanchez,* 928 F.2d 1450, 1457 (6th Cir.1991); *United States v. Hughes,* 891 F.2d 597, 601 (6th Cir.1989).

■ In this case, the Government offered both direct and circumstantial evidence of a drug conspiracy. Three witnesses offered direct evidence of a conspiracy. Mass Samake, another drug dealer in Cincinnati, testified that Defendant asked him to introduce Defendant to Alexander Gonzales, a cocaine supplier from New York City. After Defendant met with Gonzales in mid–1998, Gonzales and Samake sold over five kilograms of cocaine within a few months to Defendant. While Defendant was buying cocaine from Gonzales and Samake, he was also selling crack to Parker. Parker purchased crack cocaine from Defendant twice, and Defendant used a runner to deliver the crack. After Parker was arrested with the crack he purchased from Defendant, he agreed to cooperate with the police. Parker then made three controlled purchases of crack cocaine within a few weeks. For two of these sales Defendant used other people to deliver the crack cocaine. Furthermore, Daniels testified that he bought crack from Defendant on partial credit, i.e., Daniels initially would pay for only part of the crack cocaine before he received it and then pay the rest after he resold it to others.

This evidence establishes a conspiracy by showing that Defendant obtained cocaine from New York City in large quantities and sold it to local dealers in Cincinna-

ti in smaller quantities on partial credit. Moreover, he also used other people to deliver the crack to local dealers. This is circumstantial evidence of an agreement to distribute crack cocaine on which a reasonable jury could convict beyond a reasonable doubt. Further, the verdict was not against the great weight of the evidence. Therefore the district court did not err in denying his motion for acquittal or his motion for a new trial.

## CONCLUSION

We AFFIRM the judgment of the district court.