NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0493n.06

No. 22-5203

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COURTNEY LEO PIERCE, | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**FILED**
Dec 04, 2023
KELLY L. STEPHENS, Clerk

Before:  SILER, KETHLEDGE, and WHITE, Circuit Judges.

SILER, Circuit Judge.  Defendant Courtney Leo Pierce is before us challenging the district court's denial of his motion for a mistrial and the procedural and substantive reasonableness of his sentence.[1]  We affirm.

## I.

In 2021, Pierce was indicted for possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  The district court scheduled a trial and ordered that all motions in limine be filed at least two weeks in advance.  However, Pierce moved on the first day of trial to exclude any reference that he began a relationship with one of the government's witnesses, Kevin Riley, while they were both in prison.  Despite Pierce's delay, the court granted the motion; specifically, the court found that while the evidence was relevant, its admission in the government's case in chief would be unfairly prejudicial.

---

[1] We have determined that oral argument is unnecessary.  See I.O.P. 34(a)(4).

During the trial, the government introduced testimony that law enforcement began surveilling a vehicle driven by Pierce and pulled it over following a traffic violation. Pierce exited the vehicle and consented to a search, which initially did not reveal any drugs. His passenger, Jalisa Woods, then exited the vehicle, and officers noticed a large bulge in her pants. After officers inquired about the bulge, Woods handed an officer a baggie with a crystal-like substance, which was found to be methamphetamine. The purity level of the meth was determined to be approximately 81 percent.

In addition, Woods testified that when law enforcement first pulled the vehicle over, Pierce started cursing, grabbed drugs from the backseat, and asked her to put the drugs in her pants. Woods refused, but Pierce forced the drugs down her pants.

Riley and another of the government's witnesses, Michael Payne, testified that they purchased meth from Pierce on several occasions, and they communicated with Pierce to purchase meth from him. Riley further confirmed that Pierce had told him that he was on his way to deliver drugs to him around the time of the traffic stop.

Finally, at the beginning of Riley's testimony on the second day of trial, he indicated that his relationship with Pierce began while they were incarcerated. In particular, the government and Riley had the following exchange:

Q. Did you remember -- and I don't want to get into where you met Mr. Pierce, but about when did you meet Mr. Pierce?

A. 2019.

Q. And at some point, did your involvement with Mr. Pierce, when did it begin to involve methamphetamine?

A. Around June or July of that year.

Q. And how did that get started?

A.    We were incarcerated --

Q.    No.  I want to stop you there.

Following the government's interjection, the district court excused the jury for the parties to consider Riley's utterance.

Pierce's counsel then moved for a mistrial, asserting that Riley's testimony was prejudicial and in contravention of the court's prior order.  The district court analyzed the motion using the factors articulated by this court and ultimately denied it.  The parties then discussed the content of a limiting instruction.  The court offered to add an instruction that "they jury should not consider in any way Mr. Riley's testimony as indicating that the defendant has been in jail or has a criminal record."  In response, Pierce suggested an instruction without that language and the court delivered the instruction requested by Pierce immediately upon the jury's return to the courtroom.[2]

After the government concluded its case, the court denied Pierce's renewed motion for a mistrial and request for a judgment of acquittal.  Pierce then rested his case, without presenting any evidence to the jury.  The jury returned a guilty verdict on the sole count.

At sentencing, the court determined that Pierce had a total offense level of 32, with a criminal history category of VI, resulting in a Guidelines range of 210 to 262 months and a mandatory minimum of 180 months based on Pierce's prior conviction for a serious violent felony. Pierce argued that a variance down to the statutory minimum was warranted because the purity level in this case was just above the level for a mixture, rather than actual, meth charge, which

---

[2] Pierce's counsel said he would prefer: "'The witness's last remark was completely irrelevant and contrary to the order of the Court, and you shall disregard the remark completely,' rather than reiterate penitentiary or incarceration."  The district court instructed the jury:  "The witness's answer and remark were irrelevant to this case.  They contained information contrary to court order.  I'm going to direct the jury to completely disregard the last answer and remark that Mr. Riley made in your consideration of this case."

would have resulted in a lower Guidelines sentence. He also asserted that there was "[n]o real empirical basis for the drug quantities and the substances that bring us to where we are." He further compared meth to heroin and fentanyl cases, maintaining that those substances are seen "far more regularly that's causing deaths in the communities than meth[]."

The court thoroughly considered the factors under 18 U.S.C. § 3553(a), as well as Pierce's request for a downward variance to the mandatory minimum. It "heard the argument [counsel] has made, looked at the policy statements, kinds of sentences, taking all that into account," and it "appreciate[d] the arguments over the quality of the drug." However, the court relied on the jury's finding, based on the evidence presented at trial, that this case involved actual meth. It further indicated that it understood the arguments attempting to distinguish meth from heroin and fentanyl, but based on the court's experience, it understood why there was "a heavy hammer for meth[] cases" due to the effect and harm meth had on the community.

The court rejected Pierce's request for a downward variance, and it sentenced him to 220 months of imprisonment. The court concluded by asking if there were any further objections, and Pierce responded that he had none.

**II.**

Pierce contends on appeal that the district court erred in denying his motion for a mistrial based on Riley's utterance and that his sentence is procedurally and substantively unreasonable. We reject each of Pierce's assertions.

**A. Pierce's Motion for a Mistrial**

Pierce maintains that the district court erred when it denied his motion for a mistrial after Riley testified that he met Pierce while they were incarcerated. We review a district court's denial

of a motion for mistrial for abuse of discretion. *United States v. Cordell*, 924 F.2d 614, 617 (6th Cir. 1991).

We generally follow a two-step process "[w]here, as here, the defendant argues the district court should have granted a mistrial due to improper testimony[.]" *United States v. Wiggins*, 784 F. App'x 919, 923 (6th Cir. 2019). "First, we consider whether the challenged testimony was in fact improper"; if so, "we must determine whether the challenged testimony was so clearly improper and prejudicial to the defendant[] that the harm could not be erased by any instruction which the court might give." *Id.* at 923–24 (internal quotation marks omitted) (quoting *United States v. Howard*, 621 F.3d 433, 458–59 (6th Cir. 2010)). We employ five factors in our consideration of the second step:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*Howard*, 621 F.3d at 459 (citation omitted).

The district court found that Riley's remark indicating that he had met Pierce while they were incarcerated was prejudicial. However, it found that the five factors weighed against granting Pierce's motion for a mistrial because the remark was unsolicited and not significant in light of the whole record, the government's line of questioning was reasonable, and there was no bad faith exhibited by the government. We agree that while the testimony may have been improper, *cf. United States v. Alsop*, 12 F. App'x 253, 258 (6th Cir. 2001) (per curiam), Riley's remark was not overly prejudicial or harmful.

The record belies Pierce's assertion on appeal that the government acted in bad faith and that it solicited Riley's remark through an unreasonable line of questioning. During its

questioning, the government specifically instructed Riley not to "get into where [he] met Mr. Pierce." And when Riley indicated that his relationship with Pierce began to involve meth while they were incarcerated, the government immediately interjected before Riley could delve into the intricacies of the incarceration, telling him "No. I want to stop you there."

Moreover, the government had advised Riley's counsel of the court's order prohibiting reference of the incarceration. However, given the timing of the motion in limine and the court's ruling—issued only one day before and on the first day of trial—neither the government nor Riley's counsel had had an opportunity to convey the ruling to Riley. Even still, as the government argued in the district court, it attempted "through leading questions not to get into that subject matter," and again, told Riley that day, "[t]here in court, not to get into where they met."

Pierce also asserts that the district court's limiting instruction was not immediate, clear, or forceful. However, Pierce has cited no case law or evidence establishing that the court's 73-minute delay here—in which it resolved his motion for a mistrial and determined the substance of the limiting instruction—weighs in favor of a mistrial. Conversely, we have found that sufficiently clear and forceful limiting instructions "retained their curative effect in spite of [a] 70-minute delay between the improper questions and the curative instructions." *United States v. Wiedyk*, 71 F.3d 602, 608 n.2 (6th Cir. 1995); *see also United States v. George*, 160 F. App'x 450, 457 (6th Cir. 2005) (finding that an instruction administered "at the end" of a witness's testimony was sufficient to cure any prejudice to the defendant from an improper statement). And despite Pierce's argument before us that the instruction was not clear and forceful, the district court essentially "parrot[ed]" to the jury the instruction explicitly requested by Pierce.

Finally, Riley's statement was "a small part of the evidence" against Pierce over the course of the three-day trial, and "[i]n the context of all that happened in the trial, there is no reasonable

possibility that the evidence complained of might have contributed to the conviction," particularly given the court's clear and forceful limiting instruction to disregard the statement. *United States v. Coffman*, 574 F. App'x 541, 555 (6th Cir. 2014) (citations and quotation marks omitted). In all, the government presented "ample evidence" against Pierce irrespective of Riley's remark to support the jury's finding of guilt. *See United States v. Young*, 496 F. App'x 570, 577 (6th Cir. 2012).

Based on our consideration of these factors, we cannot say that Riley's testimony was so prejudicial that the court's limiting instruction could not erase any resulting harm. Accordingly, the district court did not abuse its discretion in denying the motion for a mistrial.

**B. Reasonableness of Pierce's Sentence**

Pierce also challenges the procedural and substantive reasonableness of his sentence. We typically review challenges to a sentence's reasonableness for abuse of discretion. *United States v. Brooks*, 628 F.3d 791, 795 (6th Cir. 2011). However, because Pierce failed to object to the district court's consideration and rejection of his request for a downward variance, we review his procedural challenge for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008). Moreover, "[w]e presume a within-Guidelines sentence is substantively reasonable." *United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023) (citation omitted).

Pierce asserts that the district court committed procedural error because it "failed to understand, and thus address, [his] argument that the unconscionable and empirically devoid 10-to-1 sentencing disparity between actual/ice meth, on the one hand, and meth mixture, on the other, mandated that the court vary downward from the arbitrary and artificially elevated Guideline-determined range." He also cites various district court cases throughout the country, asserting that those "courts have concluded that the 10-to-1 meth ratio is baseless, and they refuse to apply it[.]"

Pierce contends that "[t]hese failings" by the district court also establish the substantive unreasonableness of his sentence and that his sentence was greater than necessary because the Guidelines for meth offenses are unfairly harsh compared to other serious drug offenses, such as those involving fentanyl and heroin.

However, as Pierce recognizes, we have held that a "challenge to the 10:1 methamphetamine-mixture ratio amounts to little more than a policy disagreement with the Guidelines, which the district court ha[s] discretion to reject." *United States v. Mosley*, 53 F.4th 947, 965 (6th Cir. 2022); *see also United States v. Jennings*, No. 21-5374, 2021 WL 4621872, at *3 (6th Cir. Oct. 7, 2021) ("Unsurprisingly, we have rejected 'empirical' attacks on the [G]uidelines many times before, finding no abuse of discretion when district courts simply apply them as written."). And here, the district court thoroughly considered Pierce's request for a variance, based on "the chemistry and the relative gravity of the different substances," as well as "the policy statements [and] kinds of sentences." And despite Pierce's contention to the contrary, the district court reiterated throughout the hearing that it considered the Guidelines as advisory only. Thus, the district court was plainly aware of its discretion to vary below the Guidelines based on Pierce's policy arguments; however, it did not abuse its discretion—let alone commit plain error—by declining to do so. *See Brooks*, 628 F.3d at 797, 800.

Finally, the court outlined the § 3553(a) factors and their application to Pierce, and it addressed his argument comparing the length of sentences for meth offenses against those involving heroin and fentanyl, in addition to his argument regarding the difference in sentences for actual and mixture meth cases. However, it rejected Pierce's request to vary below the Guidelines based on the seriousness of the offense, "the total lack of respect for the law, the clear need for just punishment, and the sharp need for protection." "That some fraction of similar

defendants received variances does not show that the court abused its discretion in balancing the § 3553(a) factors and imposing a within-[G]uidelines sentence here." *United States v. Butler*, No. 21-5589, 2022 WL 1132891, at *3 (6th Cir. Apr. 18, 2022).

**AFFIRMED**.