**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clarence EVANS, Defendant–Appellant.**

No. 88–6100.

United States Court of Appeals, Sixth Circuit.

Submitted May 25, 1989.

Decided Aug. 25, 1989.

W. Hickman Ewing, Jr., U.S. Atty. and Timothy R. DiScenza, Asst. U.S. Atty., Office of the U.S. Atty., Memphis, Tenn., for the U.S., plaintiff-appellee.

W. Otis Higgs, Jr., Peete, Higgs & Armstrong, Memphis, Tenn., for Clarence Evans, defendant-appellant.

Before MILBURN, Circuit Judge, and CELEBREZZE, Senior Circuit Judge, and BERTELSMAN, District Judge.*

CELEBREZZE, Senior Circuit Judge.

Defendant–Appellant Clarence Evans appeals his criminal conviction, after a jury trial, of aiding and abetting various individuals [1] in possessing with the intent to dis-

---

* Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. The other individuals who participated in the distribution of cocaine were Malcolm L. Harris, Michael D. DeMorse, Reginald J. Boxley, Robert Mark Harpster, and Ronnie L. Boyce. These individuals were indicted and tried separately.

tribute cocaine in violation of 21 U.S.C. § 841(a)(1)[2] and 18 U.S.C. § 2(a).[3] Evans contends on appeal that the trial court erred by admitting into evidence an appointment book that was seized from his vehicle at the time of his arrest as well as the testimony of a police officer that Evans claims was inadmissible hearsay. Additionally, Evans maintains that the prosecution did not sustain its burden of proof. Because we find that the Government did sustain its burden of proof and that the district court did not commit reversible error in admitting the disputed evidence, we affirm.

### I.

In August of 1987, Lt. Richard Jewell, an officer in the metro narcotics unit of the Shelby County Sheriff's Department, was conducting a drug investigation with the help of a confidential informant, Tim Ewing. Jewell, through Ewing, arranged to purchase one kilo of cocaine in two shipments from Bobby Harpster. The first purchase was scheduled to take place in a Zayre parking lot in Memphis, Tennessee, on August 19, 1987.

On that date, undercover detective James Windland and Ewing arrived in the Zayre parking lot at approximately 2:00 p.m. and parked in the middle of the lot while awaiting the arrival of Harpster with the cocaine. Shortly thereafter, while Lt. Jewell along with other police officers maintained surveillance of the Zayre parking lot, a white Buick occupied by Harpster and Michael DeMorse entered the parking lot. Harpster and DeMorse pulled their vehicle alongside Windland's parked automobile, and Windland asked Harpster whether he had the cocaine. Harpster replied that he did not have the cocaine with him but that it would be arriving shortly. Within a few minutes, a black Jeep driven by Appellant Evans entered the parking lot. The Jeep

approached the two parked cars, slowed down in front of them, and then proceeded to the corner of the parking lot and stopped. DeMorse then informed Windland and Ewing that the cocaine had arrived.

Once the Jeep parked, Evans waved to DeMorse and Harpster who were still parked next to Detective Windland and Ewing. At this time, Harpster got out of DeMorse's vehicle and into Windland's automobile. DeMorse then proceeded alone in his car to Evans' Jeep, at which point Evans motioned toward the back of the parking lot. In response to Evans' signal, Malcom Harris' gold Cadillac approached the two cars and pulled up next to Evans' Jeep. Evans walked over to the Cadillac and picked up a tan colored package which he then delivered to DeMorse. DeMorse drove back to Detective Windland's automobile and gave the package to Detective Windland who then opened the trunk of his car. This was the signal to the other police officers to move in and arrest all the participants in the cocaine deal. The package that DeMorse received from Evans contained approximately 536 grams of cocaine.

Appellant Evans was subsequently indicted on one count charging him with aiding and abetting DeMorse and Harpster in the possession with intent to distribute cocaine.

In addition to the eyewitness accounts of what transpired in the Zayre parking lot, at trial the prosecution introduced into evidence a 1987 appointment book that was seized from Evans' Jeep. Lt. Jewell testified that the appointment book contained symbols that were characteristic of drug records. Evans objected to Lt. Jewell's testimony, arguing that Lt. Jewell was not qualified as an expert to testify as to the contents of the address book. The trial court judge resolved the dispute by stating

---

**2.** 21 U.S.C. § 841(a)(1) provides in relevant part:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

**3.** 18 U.S.C. § 2(a) provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

that he thought that Lt. Jewell was going to testify that the "records have certain characteristics common to drug records" and that Evans could "argue to the jury they should not infer that they are in fact drug records." As to Lt. Jewell's competence as a witness regarding the address book, the trial court judge further added that "[t]his witness, whether you want to call him an expert or something else, this witness is competent to testify about what the characteristics of drug records are. I would think he has seen a number of them."

In his own defense, Evans took the stand at his trial and testified that he had gone to the Zayre parking lot to deliver some typing work which he had performed for Malcolm Harris. Because Evans had to be at work for Federal Express by 1:30 p.m., he claimed that he had arranged to meet Harris at the Zayre parking lot to give him the typed handbill. While waiting for Harris to arrive, Evans stated that he was approached by DeMorse who asked him if he had the stuff. Evans maintained that he told DeMorse that he didn't know what DeMorse was talking about. At that time, Evans saw Harris' yellow Cadillac enter the parking lot and Evans waved to him. When Harris arrived, Evans claimed that he approached the automobile and handed Harris the typed handbill. Upon returning to his Jeep, Evans testified that he was immediately arrested.

The jury, apparently rejecting Evans' story, convicted Evans of aiding and abetting in the possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Evans was sentenced to five years imprisonment with a four year special parole term to follow. This timely appeal ensued.

## II.

Evans first contends that the trial court erred by admitting into evidence the 1987 appointment book that was seized from Evans' Jeep at the time of his arrest. The Government offered the seized appointment book as evidence to demonstrate that the book contained symbols and numbers similar to books kept as drug records. At trial, Evans objected to the admission of the appointment book as evidence on the ground that Lt. Jewell, who was testifying as to its contents, was not qualified as an expert to testify that the appointment book was actually a recording of drug transactions by Evans. On appeal, however, Evans attacks the introduction of the 1987 appointment book into evidence on two different grounds. Evans first argues that the prosecution failed to lay a proper foundation prior to offering the appointment book as evidence. Second, Evans maintains that the prejudicial effect of the appointment book outweighed its probative value pursuant to Fed.R.Evid. 403.

In considering Evans' evidentiary objections on appeal, however, we must bear in mind that when a party fails to object to evidence at the trial court, his contention on appeal will prevail only if the trial court's evidentiary decision was plainly erroneous, thus affecting his substantial rights and resulting in a miscarriage of justice. Fed.R.Crim.P. 52(b); *see United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–1047, 84 L.Ed.2d 1 (1985); *see also United States v. Hernandez*, 873 F.2d 925, 929 (6th Cir.1989). The "plain error" rule also applies to a case, such as this, in which a party objects to the submission of evidence on specific grounds in the trial court, but on appeal the party asserts new grounds challenging the evidence. *See United States v. Johnson*, 722 F.2d 407, 409 (8th Cir.1983) (per curiam). "Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). Appellate courts, therefore, should be careful to apply the plain error doctrine only in exceptional cases. *See United States v. Frady*, 456 U.S. 152, 163 & nn. 13–14, 102 S.Ct. 1584, 1592, nn. 13–14, 71 L.Ed.2d 816 (1982).

■ Initially, Evans argues that the government failed to lay a proper foundation prior to the submission of the 1987 appointment book into evidence. He contends that the prosecution failed to demonstrate that the book actually belonged to him since the government presented no evidence identifying whose handwriting was in the book, nor whose fingerprints were on the book. We find, however, that Evans' emphasis on the ownership of the book is not controlling here. The 1987 appointment book was seized from Evans' Jeep at the same time he was arrested, and Lt. Jewell identified it at trial as the same book he discovered in Evans' Jeep. Under these circumstances, we conclude that the book was sufficiently identified with Evans so that its admission into evidence against Evans was not erroneous. Moreover, even if we were to conclude that there was some technical deficiency in the Government's proof, given the strength of the eyewitness testimony as to Evans' participation in the drug transaction, we would nonetheless hold that the error did not affect his "substantial rights" under Rule 52(b), Fed.R. Crim.P.; *see Young,* 470 U.S. at 16, 105 S.Ct. at 1046 (plain error review must be undertaken in context of the record as a whole). Accordingly, the admission of the appointment book into evidence was not plain error.

■ Evans next argues that the danger of unfair prejudice substantially outweighed the probative value of the 1987 appointment book and Lt. Jewell's interpretive testimony. *See* Fed.R.Evid. 403. In his brief Evans does not clearly identify the nature of this prejudice, but we assume for the purposes of this discussion that the prejudice is to be found in the possibility that the jury would convict Evans for his participation in the prior drug transactions about which Lt. Jewell supposedly testified. We disagree. Lt. Jewell did not testify that the only conclusion to be drawn from the cryptic symbols and numbers contained in the appointment book was that they were drug records. Rather, Lt. Jewell testified that he had examined numerous book records of drug dealers during his seven and one-half years as an officer in the narcotics department, and that the methods of the codes and numbers contained in the appointment book were similar to the drug records he had examined in his previous work as a police officer. We do not find in this testimony the unfair prejudice that Evans would ascribe to it. Moreover, any possibility of prejudice was substantially reduced when Evans was able to cross-examine Lt. Jewell concerning his knowledge of drug records. Evans also had the opportunity to present his explanation of the contents of the book, and as the trial court pointed out, he was permitted to argue to the jury that the appointment book did not in fact contain records of drug sales. Given the trial court's normally broad discretion in admitting potentially prejudicial evidence under Rule 403, *see United States v. Zipkin,* 729 F.2d 384, 389–90 (6th Cir.1984), we conclude that the court's failure to exclude this evidence was not plain error.

### III.

■ Evans further contends that certain testimony of prosecution witness DeMorse was inadmissible hearsay. Ewing, the police informant, had approached Harpster to purchase one-half kilo of cocaine. Harpster then contacted DeMorse seeking cocaine. According to DeMorse's testimony, DeMorse told Harpster that he personally did not have any cocaine to sell, but that he knew of some other sources. DeMorse testified that he called Toby Miller, who said he had a friend who might be able to supply the cocaine.

Evans objected to this testimony as hearsay. However, the trial judge allowed DeMorse to finish, ruling that the testimony was not hearsay because it was not offered for the truth of the matter asserted, but rather, it was offered to explain the basis for DeMorse's actions taken in furtherance of the drug transaction.

DeMorse then testified that Toby Miller directed him to call a telephone number. DeMorse dialed the number and explained that he had friends who wished to purchase one-half kilo of cocaine. The person DeMorse called responded by asking where

DeMorse would like to meet. DeMorse thereupon responded that they should meet in the Zayre parking lot. The person on the phone told DeMorse to look out for someone in a black Jeep. That person turned out to be Evans.

Evans argues that this testimony was hearsay and extremely prejudicial. As defined in the federal rules, however, " 'Hearsay' is a statement, other than one made by the defendant while testifying at the trial ..., offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c); *see United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *United States v. Gibson*, 675 F.2d 825, 833–34 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982) (testimony by witness as to what declarant told him are hearsay and inadmissible only when the statements are offered to prove the truth or falsity of their contents).

In the case at bar, we find that the trial court properly admitted DeMorse's testimony regarding his conversation with Toby Miller. The testimony was not offered to prove the truth of the matters contained in the conversation, but merely to explain the actions DeMorse took in carrying out the drug transaction. *See United States v. Saint Prix*, 672 F.2d 1077, 1083 (2nd Cir.), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982) (defendant argued that sales slips bearing his name for vans used to move marijuana should have been excluded as hearsay; the court stated that "the sales slips were not admitted to prove that [defendant] bought the vans. They were admitted to prove that someone using [defendant's] name bought the vans...."); *United States v. Bruner*, 657 F.2d 1278, 1284–85 (D.C.Cir.1981) (prescriptions offered to show they were used to obtain drugs were not hearsay since they were not offered to prove the truth of the assertions they contained). Since the testimony of DeMorse concerning Miller's statements in a telephone conversation were only offered to construct the sequence of events leading up to the drug transaction in the Zayre parking lot, the testimony was not hearsay and was properly admitted.

## IV.

■ Lastly, Evans contends that there was insufficient evidence to link him to the sale of cocaine from DeMorse and Harpster to Detective Windland. Evans argues that since there was no evidence presented at trial of Evans' fingerprints being on the package containing the cocaine, or photographs of the exchange, there remained a reasonable doubt as to whether he was involved in the cocaine transaction.

On appeal, the standard of review for claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Abadi*, 706 F.2d 178, 180 (6th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983). Issues of witness credibility, moreover, are strictly for the jury to determine. *See United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir.1988).

The essential elements in a violation of 21 U.S.C. § 841(a)(1) are "for any person knowingly or intentionally to ... possess with intent to ... distribute ... a controlled substance." *See United States v. Vergara*, 687 F.2d 57, 61–62 (5th Cir.1982); *United States v. Pope*, 561 F.2d 663, 669 (6th Cir.1977). "To be found guilty of the crime of aiding and abetting a criminal venture, a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." *United States v. Knox*, 839 F.2d 285, 294 (6th Cir.1988); *see United States v. Winston*, 687 F.2d 832, 834 (6th Cir.1982).

In the case at bar, ample evidence of record supports the jury's verdict. Testimony by Lt. Jewell, DeMorse, and Detective Windland all established that Evans arrived at the Zayre parking lot in a black Jeep, approached the other two cars, and

then parked his jeep in a corner of the lot. DeMorse testified that Evans made a waving motion with his arm signaling a yellow Cadillac to approach him. Upon the arrival of the yellow Cadillac, Evans was observed by the three witnesses to have approached the Cadillac and return with a package. Evans handed this package to DeMorse who delivered it to Detective Windland. This package was discovered to contain 536 grams of cocaine. Although Evans testified that he was only at the Zayre parking lot in order to deliver typing which he had done for Harris, who was in the yellow Cadillac, the eyewitness testimony clearly gave the jury reason to disbelieve Evans' assertions. Viewing the evidence and all the inferences which could be drawn from it in the light most favorable to the government, *see Abadi*, 706 F.2d at 180, therefore, we find that there was sufficient evidence to support the jury's conviction of Evans on the charge of aiding and abetting in the possession with intent to distribute cocaine.

### V.

The judgment of the district court is accordingly AFFIRMED.