**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0834n.06
Filed: November 15, 2006

No. 05-2034

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ARNOLD VICTOR HENRY, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  BATCHELDER, and MOORE, Circuit Judges; and HOOD,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Arnold Victor Henry ("Henry") appeals his conviction for violating 18 U.S.C. § 922(g)(1), the felon in possession of a firearm statute.  On appeal, Henry claims ineffective assistance of counsel, that the trial court erred in its admission of certain evidence, and prosecutorial misconduct.  Based on the following discussion, we **AFFIRM** the conviction.

**I. BACKGROUND**

Shortly before 2:00 a.m. on July 6, 2003, the Time Out Bar ("the bar") in Howell, Michigan began telling patrons it was time to leave.  There was a fight in the parking lot outside the bar.  As bouncers were breaking up the scuffle, they heard a shot fired.  They looked in the direction of the

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

sound and saw Henry holding a revolver in the air, yelling that those involved should stop fighting. Henry was then observed putting the revolver under the front passenger seat of his car and leaving with a man and a woman.

The police were contacted. At 2:50 a.m., Livingston County Deputy Sheriff Jeff Krysan observed a car matching the description of Henry's vehicle. He stopped Henry's car and seized a revolver containing five live rounds and one spent shell casing.

Henry was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At trial, the government put forth four witnesses who were outside of the bar on the night in question and saw Henry holding a revolver immediately after they heard the shot fired. Cedric Turner, the man who was in the car with Henry, testified that he heard a shot fired but had not seen a gun that night. None of the witnesses had seen any confrontation that evening directly involving Henry. At the conclusion of the government's case, the jury heard stipulations that Henry had previously been convicted of an unspecified crime punishable by imprisonment exceeding one year, and that the revolver had previously been transported in interstate commerce.

Next, Henry put forth his defense of justification, testifying that he was defending himself from what he believed to be an impending attack by three unidentified men, and that the revolver he used to fire the shot belonged to Elizabeth Riffle ("Riffle"), the woman who was in the car with Henry. According to Henry, after he fired the shot, Riffle grabbed the revolver, walked back to Henry's car and said "let's get . . . out of here." Joint Appendix ("J.A.") at 217 (Trial Tr. Vol. 2 at 191) (Henry Test.). In response to Henry's testimony about Riffle, the prosecutor said, "Oh, boy, this woman is a rocket scientist." *Id*. Henry objected, asking that the statement be stricken, but was overruled.

2

During Henry's direct testimony, defense counsel elicited the admission that Henry had "a history of drug usage," and "convictions for sales or distributing, or possession of [cocaine] with intent to distribute." J.A. at 210 (Trial Tr. Vol. 2 at 184) (Henry Test.). On cross-examination, the government elicited Henry's further admission that he had three prior convictions for delivery of controlled substances, for which he had been sentenced or imprisoned within the preceding ten years.

Also testifying on Henry's behalf was John Ball ("Ball") who testified that he did not hear a gunshot on the night in question. Ball testified on cross-examination that ten days after the shooting he had used marijuana while in an automobile with Henry, and they were stopped by police. Over defense objection, Ball testified that he had gotten the marijuana at a trailer park, but he did not reveal the identity of the supplier.

During closing arguments, the prosecutor noted that, as to Henry's version of what happened on the night in question, "there's no evidence in this case that he has ever made this statement until he took the stand yesterday, no evidence whatsoever." J.A. at 248 (Trial Tr. Vol. 3 at 23). Henry's counsel objected to this statement, but was overruled. The prosecutor also commented that of the up to forty people in the parking lot that night, "no one saw th[e] fight [between Henry and the three men] except Mr. Henry." J.A. at 254 (Trial Tr. Vol. 3 at 29). The jury was instructed on the defense of justification, but found Henry guilty as charged.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In our order dated December 2, 2005, denying Henry's motion to remand to the district court for an evidentiary hearing on the issue of ineffective assistance of counsel, we stated the applicable law as follows:

3

> Except in the unusual case in which the record is adequate to assess the merits of a claim, this court generally will decline to address ineffective assistance of counsel on a direct appeal. *United States v. Bradley*, 400 F.3d 459, 461-62 (6th Cir.), *cert. denied*, 126 S. Ct. 145 (2005). In most cases, the preferred manner in which to raise such claims is in a post-conviction proceeding. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). There is no post-conviction action pending in the district court, nor are we convinced by the motion that there are no other issues for direct appeal.

Despite this ruling, Henry continues to pursue the issue on direct appeal, arguing that this is the "unusual case in which the record is adequate to assess the merits." Henry does not point to anything in the record, however, supporting the contention that this is such a case. In keeping with this court's earlier ruling, we decline to rule on Henry's ineffective assistance of counsel argument as it is more appropriately considered in a post-conviction proceeding where the record on the issue can be further developed.

## III. EVIDENTIARY CLAIMS

Henry argues that the district court erroneously admitted the following evidence: 1) the details surrounding Henry's prior convictions; and 2) that defense witness Ball used marijuana in Henry's presence ten days after the shooting incident.

### A. Standard of Review

If timely objection is made at trial, "this court reviews de novo the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions." *United States v. Baker*, 458 F.3d 513, 516 (6th Cir. 2006) (quoting *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)) (emphasis omitted).

If, however, no objection is made at trial, the standard of review is plain error, meaning that "substantial rights" were affected by a plainly erroneous ruling, "resulting in a miscarriage of

justice." *Id*. (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)). In determining whether there is plain error, the test is as follows: "there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Id*. (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)) (alteration in original) (internal quotation marks omitted). If we determine that the three factors are met, we may, in our discretion, "notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quoting *Johnson*, 520 U.S. at 467 (alteration in original)) (internal quotation marks omitted).

## B. Evidence of Henry's Prior Convictions

Henry argues that the government's cross-examination regarding his prior convictions constituted the introduction of impermissible character evidence. Because Henry's counsel did not object to this line of questioning, the admission of this testimony is evaluated under the plain-error standard.

The Federal Rules of Evidence provide that evidence of a defendant-witness's conviction of a crime "shall be admitted" if the crime is "punishable by . . . imprisonment in excess of one year . . . [and] if the court determines that the probative value of admitting th[e] evidence outweighs its prejudicial effect to the accused . . . ." FED. R. EVID. 609(a)(1).[1]

Henry took the stand as a witness. The government's questions regarding Henry's past convictions fit within the parameters of the rule, and, thus, there was no plain error in allowing the questions.

---

[1]Rule 609(b) also has a timing requirement which the convictions in issue undisputedly satisfy.

## C. Evidence of a Defense Witness's Use of Marijuana in Henry's Presence

Henry argues that the cross-examination of Ball, which elicited testimony that he was using marijuana in Henry's presence ten days after the shooting incident, "at least by implication, fomented the notion that Henry used marijuana ten days after the altercation . . . ." Henry Br. at 20. Henry argues that this questioning amounted to "a gratuitous, improper attack on Henry's character and a due process violation." *Id*. at 20-21.

Ball admitted — without objection from Henry — to smoking marijuana in Henry's presence, and, therefore, this part of the testimony is reviewed under the plain-error standard. The general rule under Rule 402 of the Federal Rules of Evidence, is that "[a]ll relevant evidence is admissible . . . ." FED. R. EVID. 402. The Supreme Court recognizes that evidence which tends to show a witness's bias is relevant impeachment evidence and admissible. *United States v. Abel*, 469 U.S. 45, 51 (1984).

The government asserts that its purpose in eliciting the testimony was to show "the close and confidential relationship between the witness Ball and [Henry]: were the two mere casual acquaintances, it is unlikely Ball would have been driving [Henry] . . . and openly smoking marijuana in his presence." Gov't Br. at 14. Thus, the government was not eliciting this testimony as character evidence against Henry, but, rather, as going to Ball's bias. Admission of this testimony was not plain error.

Henry did object to the question as to where Ball obtained the marijuana. Henry's objection was based on Rule 403 which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Although the district court overruled the objection, we need not determine whether this ruling was improper. Ball never named his supplier; rather, he indicated only that he had obtained the marijuana at a trailer park. This testimony, therefore, was harmless to Henry as there was no suggestion that Henry had ever been to any trailer park.

## IV. PROSECUTORIAL MISCONDUCT CLAIMS

Henry argues that the prosecutor made comments during his cross-examination of Henry and during his summation which deprived Henry of a fair trial. We examine each allegation in turn.

### A. Standards of Review

"Where contemporaneous objections are made at the time of testimony, we review claims of prosecutorial misconduct in violation of due process for harmless error." *United States v. Blood*, 435 F.3d 612, 627-28 (6th Cir. 2006). "[I]t is well settled that an error which is not of constitutional dimension is harmless unless it is more probable than not that the error materially affected the verdict." *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir.), *cert. denied*, 525 U.S. 830 (1998) (internal quotation marks omitted).

The standard of review for determining "[w]hether the government's closing argument constitutes prosecutorial misconduct presents a mixed question of law and fact that we review de novo." *United States v. Tarwater*, 308 F.3d 494, 510-511 (6th Cir. 2002). The first step is to "determine . . . whether the statements were improper." *Id*. at 511. If so, the next step is to determine whether the statements "were flagrant and warrant reversal." *Id*. However, where no

objection was made during trial, we review the comment only for plain error. *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006).

## B.  Statement Made While Cross-examining Henry

Henry argues that the "government counsel's sneer-like reference to . . . Riffle as a 'rocket scientist' during cross-examination of Henry, which the [c]ourt allowed to stand over objection, was an improper disparagement of Henry's version of the events which led to the charge against him and of his defense . . . ." Henry Br. at 21.  Although this isolated comment was improperly made during testimony, it would have been acceptable to make the same comment during the government's summation.  We conclude that the comment did not materially affect the verdict and was harmless error.

## C.  Government's Comment on Henry's Failure to Relate His Story to Others

Henry argues that the government improperly commented on Henry's "post-arrest silence to impeach his exculpatory testimony at trial," thereby violating his right to due process.  Henry Br. at 23.  Specifically, the government stated in summation:

> Did anybody see three guys threatening him?  Did anybody see him doing anything that would put him in a well grounded apprehension of death or serious bodily injury?  No one testified to any such thing.  They all saw Mr. Henry with the gun in the hand, but they didn't see any three white guys around beating him up.
>
> Now let's go back to Mr. Henry's testimony.  *And incidentally there's no evidence in this case that he has ever made this statement until he took the stand yesterday, no evidence whatsoever*.

J.A. at 248 (Trial Tr. Vol. 3 at 23) (emphasis added).

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held "that the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda

8

warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Id*. at 619. In *Doyle*, the government's cross-examination pertained to the defendant's failure to explain his version of the events to *the arresting officer*. *Id*. at 613-15.

In contrast, in this case, the context in which the government's comment was made was easily understood by the jury as meaning that Henry had never told any of *the witnesses* (including his wife and friends) that he had been attacked by three men. There was no testimony at trial about any interrogation by the police, custodial or otherwise. This statement by the government as to Henry's silence, was not, therefore, improper, but was a permissible method of impeaching Henry's credibility.

**D. Government's Comment that No One At the Scene Saw the "Altercation" Alleged by Henry**

Next, Henry argues that it was prosecutorial misconduct for the prosecutor to state that of the up to forty people in the bar parking lot, no one saw the altercation involving Henry, when, at trial, only seven of the people who were at the bar testified. J.A. at 254 (Trial Tr. Vol. 3 at 29). Specifically, Henry takes issue with the following statement made by the prosecutor:

> This was a crowded parking lot. There were at least 12 or 15 people and probably more like 25 or 40 people there. And no one — no one saw this fight except Mr. Henry. No one saw him being confronted. No one even — there is no testimony that anybody even called him a racist epitaph [sic; should read "epithet"], none. Nobody heard him confronted, poked, in any way intimidated that night except Mr. Henry himself. There is no support except his own testimony.

*Id*. According to Henry, this constituted prosecutorial misconduct because: 1) this was an attack on Henry's credibility based on evidence not before the jury (no evidence was introduced on what the people who did not testify saw that night); 2) the government needed, but failed to seek, an advance ruling permitting it to argue to the jury that it should draw an adverse inference from

9

Henry's failure to produce witnesses corroborating his version of the events; and 3) this misstatement constituted improper bolstering of the witnesses who did testify. As Henry did not object to this comment during trial, we review its admission under the plain-error standard.

### 1. Attack on Credibility Based on Evidence Not Before the Jury

Henry argues that the statement at issue was improper because it attacked his credibility based on evidence not before the jury. We have previously held that a "prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony," but "such comments must 'reflect reasonable inferences from the evidence adduced at trial.'" *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999) (quoting *United States v. Goodapple,* 958 F.2d 1402, 1409-10 (7th Cir.1992)).

In its closing, the prosecutor addressed the lack of corroborating witnesses twice. The first time, after naming the seven witnesses who had testified, the prosecutor rhetorically asked, "Now how many of those people saw the defendant being jumped by three unknown racists . . . ? No one saw that, we just have Mr. Henry's word for it." J.A. at 247 (Trial Tr. Vol. 3 at 22). The statement that Henry now takes issue with was made after this statement. Although the statement Henry takes issue with was not as carefully limited to the seven witnesses at trial, when viewed in the context of the earlier statement, it was not misleading to the jury. The statement at issue was not a comment on Henry's failure to call a witness equally available to the government, but rather it pointed out that none of the trial witnesses other than Henry had seen any attack on him, and that if an attack had occurred, someone in the crowd would have seen it. *See also United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005) (finding that "the prosecutor was entitled to point out the lack of evidence supporting [the defendant's] theories."). Admission of this statement was not plain error.

10

## 2. Failure to Seek an Advance Ruling

Henry argues that an advance ruling was required before the prosecutor could make the statement at issue. *See United States v. Beeler*, 587 F.2d 340, 343 (6th Cir. 1978), *cert. denied*, 454 U.S. 860 (1981) (ruling that "counsel must seek and obtain an advance ruling from the [c]ourt on the permissibility of arguing for an adverse inference to be drawn from the absence of witnesses"). However, in *United States v. Martin*, 696 F.2d 49 (6th Cir.), *cert. denied*, 460 U.S. 1073 (1983), we explained that an advance-ruling requirement applies only where the prosecutor makes a direct request that the jury draw an adverse inference, or possibly where there is "a strong implication," that such an inference should be drawn. *Id*. at 52. Because the prosecutor's statement here did not directly request the jury to make an adverse inference respecting Henry's failure to produce corroborating witnesses, nor did the statement strongly imply that the jury should do so, an advance ruling on the matter was not required before the prosecutor made the statement.

## 3. Bolstering

Henry argues that the prosecutor's statement constituted improper bolstering. "Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Francis*, 170 F.3d at 551. Here the comment merely pointed to the lack of any evidence supporting Henry's testimony that he had been attacked. The statement did not suggest that the government knew anything that the jury did not. In fact, the prosecutor prefaced its argument with an explicit statement to the contrary:

> I'd just like to point out a couple of things that I would like you to consider while you review th[e] evidence. And before I do that, let me explain, I'm not telling you my personal belief of anything. I don't know anything more about this case than you do.
> You've sat through the whole trial. You were here for every — for every moment in the testimony. And if something I say doesn't comport with your memory

11

of the testimony, then you should certainly disregard it. I'm not telling you what I think you should do based on anything other than the testimony that you heard here in [c]ourt.

J.A. at 246 (Trial Tr. Vol. 3 at 21). There was no improper bolstering here.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** Henry's conviction.