**NOT RECOMMENDED FOR PUBLICATION**

**File Name:  20a0517n.06**

**No. 19-1526**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td rowspan="2"></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td></td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td>GARY HAIRSTON,</td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td></td><td>)</td><td>DISTRICT OF MICHIGAN</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
</table>

**FILED**
Sep 02, 2020
DEBORAH S. HUNT, Clerk

BEFORE:     BOGGS, CLAY, and GIBBONS, Circuit Judges.

BOGGS, Circuit Judge.  This appeal arises out of a district-court conviction of Gary Hairston, after a jury trial, on twenty-five counts of assisting in the preparation of false tax returns. Hairston now appeals his conviction, challenging the sufficiency of evidence on two issues: (1) that it was Hairston who assisted in the preparation of nine out of twenty-five false tax returns, and (2) that Hairston acted willfully on all counts.  We affirm the conviction.

## I.     BACKGROUND

Hairston was a licensed CPA operating an accounting and tax-preparation business.  Over the years, he prepared and filed for his clients multiple false federal tax returns and supporting documentation.  By falsely reporting to the Internal Revenue Service (IRS) that his unemployed, retired, or disabled clients earned wages and operated businesses, such as childcare businesses, Hairston maximized the Earned Income Tax Credit (EITC) on their returns and caused the IRS to issue refunds to which his clients were not entitled.

Hairston was indicted on twenty-six counts of assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). One count was dismissed on the government's motion prior to trial.

Hairston raised insufficiency of evidence at trial in his motions for directed verdict pursuant to Federal Rule of Criminal Procedure 29 at the conclusion of both the government's and the defense's cases. Both motions were denied. After a jury trial, Hairston was convicted on twenty-five counts of assisting in the preparation of false tax returns for seven clients. He was sentenced to thirty months of imprisonment on each of the twenty-five counts, to be served concurrently, and to one year of supervised release on each count, to be served concurrently. Hairston must also pay an assessment of $2,500 and a restitution to the IRS in the amount of $118,048. Hairston now timely appeals his conviction. He challenges the sufficiency of evidence on two grounds raised below: that there was insufficient evidence that he was the preparer of nine of the returns,[1] and that he acted willfully.

## II.     ANALYSIS

### A.     Standard of Review

Hairston challenges the sufficiency of the evidence presented to support his conviction.

We have jurisdiction under 28 U.S.C. §1291 over an appeal of a final judgment of conviction by a district court in a criminal case.

---

[1] Although Hairston was sentenced to concurrent sentences of 30 months on all twenty-five counts, as well as one-year supervised release on all counts to run concurrently, vacating his judgment as to nine counts might have the effect of reducing the tax-loss amount affecting both the restitution amount and the length of the sentence. Decreasing the tax loss by a mere $18,048 would result in lowering the offense level by two levels, from 18 to 16 (resulting in a guidelines range of 21–27 months instead of 27–33 months of imprisonment). *See* USSG §2T4.1(E) and (F); USSG §2T1.4(b)(1)(B). Additionally, the district court imposed a $2,500 special assessment on the twenty-five felony counts pursuant to 18 U.S.C. § 3013(a)(2)(A), which requires a $100 assessment for felonies committed by individuals. Reversing Hairston's conviction as to nine counts would reduce his special assessment by $900. Considering these collateral consequences of his otherwise concurrent sentences, we will review his challenge of the sentence on the merits. *See Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018); *United States v. Wade*, 266 F.3d 574, 579 (6th Cir. 2001).

"In reviewing the sufficiency of the evidence, the relevant inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010) (quoting *United States v. Wallace*, 597 F.3d 794, 800 (6th Cir. 2010)); *see also Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "This is a very heavy burden" for the defendant to meet. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (internal quotation marks omitted). This standard applies to both direct and circumstantial evidence. *United States v. Meyers*, 646 F.2d 1142, 1143 (6th Cir. 1981). We must draw "all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) (citations omitted).

"Reversal of a conviction is warranted 'only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence.'" *Ibid.* (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)). In determining whether a conviction is supported by substantial and competent evidence, this court does not "weigh the evidence, assess the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). "The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

The district court's denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010).

## B. Tax Returns Listing Different Tax Preparers

Hairston alleges that, as to nine of the twenty-five tax returns forming the basis of the charges of assisting in preparation of fraudulent tax returns, he merely served in an administrative role as an Electronic Return Originator ("ERO") who submits prepared electronic tax returns to the IRS. Hairston alleges that the preparers of those tax returns were four of his employees, and that he did not review the forms before submitting them to the IRS. Hairston contends that there was thus insufficient evidence to sustain the convictions as to nine counts—Counts 2–4, 6–7, 12, 20, 25, and 26—because he did not personally prepare those tax returns.

The function of an Electronic Return Originator is described in *United States v. Searan* as follows:

> An Electronic Return Originator ("ERO") enters a taxpayer's data into a commercially available computer software program, then electronically transmits the information via modem to the IRS for processing as a tax return. When the IRS receives the information, it conducts a series of verifications to check for mathematical errors and ascertain whether the social security numbers correspond to those in IRS records. Upon completion of this process, the IRS sends an electronic message back to the ERO reporting that it has accepted the return. The acknowledgment indicates only that the return has successfully completed the initial screening process; it does not state whether the deductions taken on the return are allowable or otherwise appropriate. According to IRS guidelines, the taxpayer must verify and sign IRS Form 8453 after the return has been prepared but before the ERO transmits it electronically. Form 8453 contains a summary of figures on the return and a statement authorizing the ERO to file the return electronically on the taxpayer's behalf. The taxpayer must be given a copy of the prepared return at the time of signature, as well as a copy of the signed Form 8453 upon its completion.

259 F.3d 434, 438 (6th Cir. 2001). Hairston alleges that he served as a mere ERO, and that his employees were the preparers of the nine tax returns in connection with which he challenges his conviction on this basis. Internal Revenue Code defines "tax return preparer" in 26 U.S.C. § 7701(36):

> (A) In general.—The term "tax return preparer" means any person who prepares for compensation, or who employs one or more persons to prepare for compensation,

4

any return of tax imposed by this title or any claim for refund of tax imposed by this title. For purposes of the preceding sentence, the preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund.

(B) Exceptions.—A person shall not be a "tax return preparer" merely because such person—

> (i) furnishes typing, reproducing, or other mechanical assistance,

> (ii) prepares a return or claim for refund of the employer (or of an officer or employee of the employer) by whom he is regularly and continuously employed,

> (iii) prepares as a fiduciary a return or claim for refund for any person, or

> (iv) prepares a claim for refund for a taxpayer in response to any notice of deficiency issued to such taxpayer or in response to any waiver of restriction after the commencement of an audit of such taxpayer or another taxpayer if a determination in such audit of such other taxpayer directly or indirectly affects the tax liability of such taxpayer.

26 U.S.C. § 7701(36).

Even though Hairston's employees were named as tax preparers on the documentation pertinent to nine tax returns, the taxpayers on whose behalf Hairston's business prepared fraudulent tax returns testified that they were not familiar with the individuals listed as preparers on their returns. Those clients testified that they were dealing with Hairston and not with his employees. The clients also did not witness who filled out their tax forms. Only one of them, Rosetta Young, testified that someone other than Hairston, namely Hairston's employees Damon Riesgo and another female employee, prepared her 2012 and 2013 tax returns, respectively. But client Young also testified at Hairston's trial that Riesgo had sought and received Hairston's approval for her tax return. For example, Young testified:

> Q. Now, can you see where that says Damon Riesgo prepared this return?
> A. Yes. I see that. I see that.
> Q. Is that accurate? Is that true?
> A. Yes. Because when I went to Gary, he did let another guy—you know, he told him to go ahead and help me fill out my form and he—and he—the guy did do it.
> Q. And then what did Gary do in relation to this form?
> A. Well, after the guy filled it out and then the guy took it back there for Gary to okay it, then Gary okayed it and then that was it. Then I left.

Q. How do you know that Gary okayed it?
A. Because I heard him in the back say, "Yes, that's okay," and he had to sign it.
Q. So you believe that Gary looked at this return and went over it with Mr. Riesgo?
A. I guess that he went in the back with him.

Hairston was convicted for violation of 26 U.S.C. § 7206(2), which states in relevant parts:

Any person who— …

(2) … Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; …

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206.

Hairston does not deny that, as an ERO, he *presented* to the IRS twenty-five false tax returns, including the nine returns at issue here. Instead, he alleges that his function as an ERO was merely administrative. But aside from his function as ERO, Hairston could have also been reasonably found guilty of assisting in the *preparation* of false tax returns.

The statute does not require that Hairston personally prepare the fraudulent tax returns and supporting documentation to be liable under 26 U.S.C. § 7206(2). The elements of the crime of violating § 7206(2) are "1) willfully aiding, assisting, procuring, counseling, advising, or causing, 2) the preparation or presentation of a federal income tax return, 3) that contains a statement of any material matter known by the defendant to be false." *Searan*, 259 F.3d at 441 (citing *United States v. Sassak*, 881 F.2d 276, 278 (6th Cir. 1989)). The "language of § 7206(2) effectively incorporates into this statute the theory behind accomplice liability." *Id.* at 443. A defendant may

be convicted under § 7206 even if his involvement in the preparation of the false returns was minimal. *See id.* at 447.

In *Searan*, a mother and a son ran a tax-preparation business. *Id*. at 438. The evidence showed that the mother had prepared and signed most of the returns, yet this court upheld the son's conviction under § 7206 because "he actively participated . . . by assuring victims of his and his mother's competency to file tax returns" containing illegitimate deductions. *Id*. at 445. Here, the clients met with Hairston to discuss the preparation of their tax returns, or else they relied on Hairston, who operated the business of tax-return preparation, when they brought the documents to his office and signed engagement letters.

In *United States v. Goosby*, Goosby operated a tax-preparation business from his home. 523 F.3d 632, 635 (6th Cir. 2008). Goosby's clients relied on him to prepare their tax returns after meeting in person with Goosby or with his employees. *Id*. at 635–36. Goosby's employees, who did not have tax-preparation training and relied on Goosby to determine the deductibility of certain items, entered data into a computer program that filled out the clients' tax returns. *Id*. at 636. Goosby testified at trial and denied that he was a tax preparer except for one amended tax return. *Id.* This court affirmed Goosby's conviction on thirty counts of willfully assisting in the preparation and presentation of false or fraudulent income tax returns, explaining that "the similarity in the type of false deductions claimed on most of the tax returns [was] strong circumstantial evidence that the defendant willfully submitted tax returns containing false statements." *Id*. at 637. Applying the standard of "viewing the evidence in the light most favorable to the government," this court held that "the jury could find beyond a reasonable doubt that Goosby was responsible for submitting the tax returns with numerous false deductions and that his actions were willful." *Ibid*.

As was the case in *Goosby*, the false tax returns prepared for Hairston's clients over the years show a pattern of similar false income and expense items, done with the result of maximizing EITC refunds. Even if Hairston did not personally prepare some of those returns, he prepared the initial-year tax returns for most of those clients and often also their subsequent returns. He prepared most of the annual tax returns for many of the clients as to whom he denies having prepared a particular tax return. In one instance, Hairston acknowledged on direct examination that although the tax return listed Marvin Wilkins as the tax preparer, it was, in fact, Hairston who had prepared the return. While client Rosetta Young confirmed that her two fraudulent tax returns (Counts 25–26) were prepared by Hairston's employees, those returns show a similar pattern of false income and expense items for nonexistent business and wages as the other twenty-three tax returns, each maximizing the EITC refund and prepared by Hairston's tax-preparation business.

Hairston alleges that the prosecution did not have sufficient evidence that it was he who assisted in the preparation of the nine tax returns in question, because various employees of his business were listed on the tax returns as preparers. He cites no authority to support his claim that a witness's testimony cannot overcome conflicting record evidence. But this court "do[es] not weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury" in assessing the sufficiency of the evidence. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)). Rather, we "review[] the evidence in a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony." *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007).

Here, the record evidence consists of multiple tax returns and supporting documentation signed by the clients that listed individuals other than Hairston as tax preparers. In one instance,

Hairston admitted that, although Marvin Wilkins was listed as the tax preparer on the tax return at issue in Count 14, it had been, in fact, Hairston who prepared the return. The clients, except for one, Rosetta Young, testified that they were not familiar with the individuals listed on their returns as tax preparers and that it was their understanding that Hairston was preparing the tax returns. The paperwork was prepared by Hairston's business, which he had organized and had a duty to supervise and control, not by his clients, who merely provided some input and signed the forms, relying on Hairston or his employees to prepare and file their tax returns. Hairston then electronically transmitted the returns to the IRS, allegedly without reviewing them. Although there is no specific evidence that Hairston prepared or directly assisted in the preparation of the nine tax returns that listed his employees as the tax preparers, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015). The jury found Hairston to be guilty of assisting in the preparation of all twenty-five false tax returns. Based on the record, while drawing "all reasonable inferences in support of the jury's verdict," *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013), we hold that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" with regard to the nine contested tax returns. *See United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We therefore affirm the district court's judgment as to Counts 2–4, 6–7, 12, 20, 25–26.

### C.    Good-Faith Defense

Hairston was convicted of twenty-five violations of 26 U.S.C. § 7206(2). Section 7206(2) is "[d]esigned to punish tax preparers and others who *willfully* prepare or present false tax returns on behalf of taxpayers regardless of the taxpayer's knowledge of the falsehood." *Searan*, 259 F.3d

at 443 (emphasis added). Relying on "a theory of liability akin to complicity," § 7206(2) "criminalizes an act that facilitates another person's crime when the act is undertaken willfully and with knowledge of the circumstances that make the other person's act illegal." *Ibid.*

> An offense under § 7206(2) has three essential elements:
>> (1) that defendant aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return;
>> (2) that the return was fraudulent or false as to a material matter; and
>> (3) that the act of the defendant was willful.

*Goosby*, 523 F.3d at 637 (citing *Sassak*, 881 F.2d at 278). Here, Hairston alleges that the evidence is insufficient with respect to the element of willfulness as to all twenty-five counts. He alleges a good-faith defense based on his training, knowledge of the tax law, and experience.

In criminal tax cases, "the standard for the statutory willfulness requirement is the voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (internal quotation marks omitted). To satisfy the willfulness element, the prosecution needs "to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* Satisfying "this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Id.* at 202. "The defendant's belief or misunderstanding need not be objectively reasonable, and whether it was held in good faith should be determined by the fact-finder." *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009) (citing *Cheek*, 498 U.S. at 202–03). Thus, "[t]he Supreme Court [in *Cheek*, 498 U.S. at 203–04,] left to the jury the decision of whether a defendant was willful and whether the professed belief was so unreasonable that it was unlikely the defendant truly believed it." *United States v. Pensyl*, 387 F.3d 456, 459 (6th Cir. 2004).

Significantly, Hairston prepared a fraudulent tax return for an IRS undercover agent, Tiffany Williams, where he actively "reconstructed her income" of $576 on her W-2 into $6,751 in wages and $2,770 in business income from a nonexistent childcare business that Williams never stated she ran, claiming $3,171 in EITC, and thus arriving at a claimed refund of $3,775. Hairston charged the undercover agent $820 to prepare this fraudulent return.

Similarly, Hairston's seven clients testified that they never ran the businesses for which Hairston included gross receipts and expense items on their tax returns, and that they did not earn the wages he listed on their tax returns. They also did not provide the business records that Hairston reported on Form 8867 nor the information that he recorded on EITC due-diligence sheets.

Paradoxically, Hairston asserted at trial that some of his clients had provided to him the invoices, receipts and other expenses "verbally." Similarly, Hairston stated that his clients did not have W-2s documenting the wage income that he included on their tax returns, and that they provided him with W-2s "verbally."

Hairston also testified that he included on the tax returns at issue various amounts and categories of business expenses reflecting "standards through the industry." To translate it into less charitable terms, Hairston was making up of whole cloth the expenses of fictitious businesses based on what he thought the industry, namely childcare businesses, was claiming as expenses. This included car and truck expenses on the returns of individuals who did not own vehicles, and advertising expenses for a "childcare business" that consisted of a client caring for her own children.

Although Hairston alleged the good-faith defense that he believed the tax returns were correct based on the information provided to him by his clients, those clients' testimony

11

contradicted his allegations: Hairston's clients claimed that they did not provide Hairston with the information or documents forming the basis of the EITC refunds because they did not run businesses and were either unemployed, retired, or disabled, rather than earning wages. Furthermore, Hairston inconsistently reported his clients' dependents' Social Security disability benefits as wages or business income or partly both, even though they are neither under the tax laws—but such manipulation of the benefits on his clients' tax returns in each case resulted in maximizing their EITC refunds. Under those circumstances, the jury could reasonably refuse to believe in the good-faith allegations of a defendant who was a CPA with nearly twenty years of practice and an experienced tax preparer attending continuing education annually.

In evaluating the sufficiency of the evidence supporting a conviction, this court "do[es] not weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994) (citing *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)). The jury found Hairston guilty of twenty-five counts of assisting in the preparation of false tax returns. Especially in light of Hairston's sometimes absurd allegations and the testimony of undercover agent Williams, including her video recording of Hairston, the jury was entitled to disbelieve Hairston's testimony explaining discrepancies between the documented financial situation of his clients and their tax returns as a method of "reconstructing income" that he applied in good faith to comply with tax laws.

Due to the complexity of the tax system, tax law is one of the few areas where the Supreme Court has held that ignorance of the law is a defense. *See Cheek*, 498 U.S. at 199–200. But the overwhelming weight of the evidence, including Hairston's own testimony, belies the allegations of this seasoned CPA and tax preparer that he cannot be found guilty of a tax violation because of

his good-faith belief that he was complying with tax laws—a belief that amounts to a licensed CPA claiming ignorance or misunderstanding of basic tenets of the tax law.

Hairston has failed by far to overcome "a very heavy burden" of challenging the sufficiency of evidence under the standard "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime [such as willingness] beyond a reasonable doubt." *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016); *see also United States v. Barnes*, 822 F.3d 914, 919 (6th Cir. 2016).

## III. CONCLUSION

For all the foregoing reasons, we **AFFIRM** the judgment of the district court.