Opinion by Judge TROTT; Dissent by Judge BEEZER.
OPINION
TROTT, Circuit Judge:
Kevin Stanley conditionally pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2) to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). As part of his plea, he reserved the right to appeal the denial of his motion to suppress the offending material located during a search of his computer, a search conducted by federal agents led by Agent Michael Prado pursuant to the alleged consent of his onetime friend and now fiancee, Tiana Stock-bridge. We have jurisdiction over this timely appeal in accord with 28 U.S.C. § 1291, and we affirm.
*948 I
The Computer’s History
The computer on which Stanley kept his collection of child pornography had a complicated history of ownership, custody, and control. During the time Stanley and his girlfriend Tiana Stockbridge lived together before he was imprisoned in 2004 for child molestation, Stockbridge and Stanley jointly owned and used the computer. Each had his and her own directories and folders on the computer which were tied to individual user names, “Kevin” for Stanley and “Tiana” for Stockbridge. Stanley had his material “password-protected” during that time and took steps to hide his cache of child pornography in the computer’s subsystems.
We predicate our statement that the computer was jointly owned on the district court’s factual finding that Stockbridge was a “co-owner,” a finding that necessarily rejected Stanley’s and Stockbridge’s protestations to the contrary. The district court’s findings regarding the computer are supported by (1) Stockbridge’s earlier statements to Agent Prado and to David Trimm, (2) Trimm’s statements to Agent Prado, and (3) Stanley’s original statement to Agent Prado that he and Stockbridge jointly owned it. More about this issue in Part IV of this opinion.
When Stanley and Stockbridge ended their relationship in 2004, Stanley moved and took the computer with him. Subsequently, he removed the password-protection from the computer, leaving Stock-bridge’s files intact.
In 2004, after Stanley was arrested on state child molestation charges, Stock-bridge went to Stanley’s residence and took possession of the computer, at the behest of Stanley’s parents. Stanley acquiesced in her acquisition and possession of it, expecting that he would get it back after serving his prison sentence, presumably with the child pornography intact— which he says caused him to engage in conduct resulting in his conviction of child molestation. Neither Stanley nor his parents placed any restrictions on Stock-bridge’s use of or access to the computer.
About one and one-half years later, the computer “crashed” and ceased to function, as computers are wont to do. Stock-bridge gave it to a friend to fix, but he failed to do so. Thus, in early 2006, Stock-bridge gave it to another friend to repair, one David Trimm. By education and experience Trimm was qualified to take on this task.
As Trimm examined the unprotected contents of the computer, he noticed files on it clearly suggesting child pornography. This discovery posed serious problems for Trimm because he was on federal probation himself for a drug felony, so he called Stockbridge, advised her of his predicament, and asked her permission to turn the computer over to his probation officer. According to Trimm, she gave him permission to do so, and he did.
Next, U.S. Probation Officer Daniel Vianello called Immigration and Customs Enforcement Special Agent Michael Prado who handles these matters and told him that Trimm, one of his supervises, had given him a computer hard drive that possibly contained child pornography.
A few days later, Agent Prado met with Trimm, who filled him in on the computer’s history and what he believed it contained. Trimm told Agent Prado that Stanley and Stockbridge were joint owners of the device. Agent Prado then took possession of it.
The next day, Agent Prado contacted Stockbridge by telephone. His purpose was to determine — -as Trimm had told him — that she was a joint owner of the computer and thus could consent to its search. According to Agent Prado’s sworn *949 declaration, Stockbridge confirmed that she “jointly owned” it and consented to its search for illicit material. She said (1) that because of his conviction for child molestation, she was concerned that Stanley was involved in the possession and distribution of child pornography, and (2) that she wished to have it examined to see if there was illegal material on it. She was correct in her assumptions, and the contents of the computer became the basis for Stanley’s conditional plea and conviction.
II
Consent to Search[1]
A.
The district court denied Stanley’s motion to suppress his cache of illicit material. In so ruling, the court implicitly and understandably rejected Stockbridge’s declaration prepared for the suppression hearing. In the declaration, she partially contradicted Agent Prado’s recitation of their telephone conversation. Now, she could not remember whether or not she consented to the search, but she denied telling Agent Prado that she suspected Stanley of harboring pornography.
Stockbridge’s credibility in connection with her declaration was seriously — if not fatally — undermined by her recent engagement to be married to Stanley, his record as a child molester notwithstanding. The circumstance of her engagement was brought to the court’s attention both in her declaration and by the prosecution during its argument on the issue of consent. This factor plainly falls into the category of potential witness bias.
The Supreme Court has said that
Bias is a term used in the “common law of evidence” to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his [or her] testimony in favor of or against a party.... Proof of bias is almost always relevant because the [factfinder] and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness’ testimony.
United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). The Court said also that “[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he [or she] testified less probable in the eyes of the[factfinder] than it would be without such testimony.” Id. at 51, 105 S.Ct. 465.
After a lengthy hearing which included the testimony of Agent Prado and Stanley plus the admission in evidence of Stock-bridge’s declaration as direct testimony, the court made these findings of fact:
[F]rom all objective indicia, the government was certainly reasonable in concluding that ... Stockbridge had authority to consent and, in fact, did give consent and that the search was done pursuant to that consent.
The court also held that Stanley had no reasonable expectation of privacy in the *950 computer while for two years it was in Stockbridge’s possession and control, and found that she was a “co-possessor, a co-owner, a common user and therefore had the authority to give consent to the search.” The factual record sufficiently supports the district court’s findings and conclusions.
B.
Stanley argues unconvincingly that because his pornographic material was “password-protected” before he went to prison, and that prior to going to prison his files and hers were segregated from each other, Stockbridge did not and could not have had the authority two years later to consent to the search. This argument fails. Among other deficiencies in this argument, when the computer came into Stockbridge’s sole possession and custody after Stanley went to prison, his material was no longer password-protected, as his attorney conceded during oral argument. Cf. Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir.2001) (although a third party may have had authority to consent to a general search of a jointly-used computer, that authority did not extend to another user’s password-protected files).
Moreover, at the time she consented to the search, Stockbridge had had total and unfettered control of the unprotected computer for all purposes for two uninterrupted years during Stanley’s time in prison, as demonstrated by her statements to Agent Prado and her delivery of it to two different friends for repair. Stanley’s own testimony confirms this arrangement:
Q. (to Stanley) And with respect to the computer that both you and Ms. Stock-bridge used, did you at times allow Ms. Stockbridge to access files in your portion of the computer?
A. (by Stanley) Yes.
Q. And was your portion of the computer password protected?
A. Earlier on it was but not at the time.
Q. Not at what time?
A. The time when I moved to Porter-ville, California.
Q. So even though you placed your trust in Ms. Stockbridge, she could have accessed your files when you were in prison?
A. Yes.
C.
“A third party has actual authority to consent to a search of a container if ... the third party has mutual use of the container and joint access or control over [it.]” United States v. Ruiz, 428 F.3d 877, 880 (9th Cir.2005) (quoting United States v. Fultz, 146 F.3d 1102, 1105 (9th Cir. 1998)). Although Stanley cannot be said under these circumstances to have abandoned the computer, he certainly cannot have entertained a legitimate expectation of privacy in it once it was delivered unconditionally and without password-protection to its co-owner, knowing that she could access his files. As the Supreme Court held in United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), “the consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared.” Expanding on this holding, the Court also said,
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the *951 co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 172 n. 7, 94 S.Ct. 988 (internal citations omitted). We reiterated this principle in United States v. Brannan, 898 F.2d 107, 108 (9th Cir.1990), saying, “ ‘Common authority’ rests upon mutual use of the property by those generally having joint access or control such that it is reasonable to recognize that each of the parties has the right to permit inspection and has assumed the risk that the other party might consent to a search.”
Finally, we follow the Supreme Court’s guidance in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In that case, Frazier and his cousin Rawls had both been using Frazier’s duffle bag. Id. at 740, 89 S.Ct. 1420. In dismissing Frazier’s Fourth Amendment claim that Rawls had no authority to consent to a search of the bag, which turned up incriminating evidence against Frazier, the Court said,
Petitioner argues that Rawls only had actual permission to use one compartment of the bag and that he had no authority to consent to a search of the other compartments. We will not, however, engage in such metaphysical subtleties in judging the efficacy of Rawls’ consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside. We find no valid search and seizure claim in this case.
Id. Here, we conclude similarly that when Stanley and his parents turned over possession, use, and control of the computer to Stockbridge, Stanley — like Frazier — assumed the risk that she would allow someone else to look inside.
Ill
Apparent Authority
In any event, even if we were to agree with our dissenting colleague that Stockbridge was not a co-owner of the computer, the district court also held that Agent Prado “was certainly reasonable in concluding” “from all objective indicia” in the record that “Stockbridge had authority to consent.” In other words, the doctrine of apparent authority suffices in Fourth Amendment terms to render this search reasonable.[2] On de novo review of this mixed question of fact and law, we agree.
The Supreme Court spelled out the relevant inquiry in Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990):
As with other factual determinations bearing upon search and seizure, determination of consent to enter must “be judged against an objective standard: would the facts available to the officer at the moment ... ‘warrant a man of reasonable caution in the belief ” that the consenting party had authority over the premises?
(quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (omission in original)).
Here, without revisiting them at this juncture, the totality of the facts and circumstances known to Agent Prado at the time of the search satisfy this test. As in the case of United States v. Buckner, 473 F.3d 551 (4th Cir.2007), Agent Prado and his assistants “did not have any indication” from Stockbridge, “or any of the attendant circumstances,” that Stanley’s child por *952 nography files were password-protected. Id. at 555. Indeed, they were not. Thus, the agents were justified in relying on Stockbridge’s consent.
IV
The Dissenting Opinion
Our respected colleague’s dissenting opinion takes issue with the district court’s resolution in favor of the prosecution of competing factual scenarios, one from the prosecution, and another from the defense. The dissenting opinion overlooks a difference between our legal responsibility as an appellate court, on one hand, and the factfinding prerogative of a trial court, on the other. Our function does not entail retrying the factual issues in a case — here, primarily (1) whether Stockbridge was the co-owner in possession of the computer, (2) whether she factually consented to the search of the computer, or not, and (3) whether she displayed the indicia of authority to do so. On appeal, we accept a district court’s findings of fact unless they are clearly erroneous. As we said in Rand v. Rowland, 154 F.3d 952, 957 n. 4 (9th Cir.1998) (en banc) (quoting Epstein v. MCA, Inc., 126 F.3d 1235, 1253 n. 18 (9th Cir.1997)), “[f]indings of fact are made on the basis of evidentiary hearings and usually involve credibility determinations, which explains why they are reviewed deferentially under the clearly erroneous standard.” This rule follows Federal Rule of Civil Procedure 52(a), which provides that “[fjindings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.” For these reasons, the Supreme Court has given us this directive:
But when a trial judge’s finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). See also United States v. Working, 224 F.3d 1093, 1102 (9th Cir.2000) (en banc) (“ “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.’ ”) (quoting Anderson, 470 U.S. at 574, 105 S.Ct. 1504).
As applied to this case, the dissent’s reliance on “facts” plainly rejected by the district court — and for good reason — is misplaced. Invoking what Stockbridge claimed in her declaration is now irrelevant, as are her denials and contradictions of Agent Prado’s testimony prepared for the suppression hearing. The district court plainly did not credit her testimony. We do not comprehend the import of the dissent’s statement that “[bjecause the government chose not to cross-examine Stockbridge, her testimony went unchallenged.” This assertion trespasses upon the factfinding and credibility prerogatives of the district court and is not consistent with Rule 52(a), Anderson v. Bessemer City, and our own standard of review jurisprudence. Moreover, the government did challenge her testimony — with contradictory evidence from Agent Prado. We understand how the district court looked askance at her newly-minted declaration in favor of her recently engaged to be spouse.
AFFIRMED.

. Although Agent Prado believed he had appropriately secured Stockbridge's consent to search the computer, "in an abundance of caution” he then secured a federal search warrant authorizing a forensic examination of it. Agent Prado gave the computer and a copy of the warrant to Special Agent Ulises Solorio for just such an examination. But because of the press of official business, Agent Solorio did not examine the computer until after the warrant expired. However, this circumstance is not germane to our disposition of this case, because as Stanley's counsel conceded during oral argument, if the agents had consent, then the warrant is irrelevant. Agent Solorio was aware of Stockbridge’s consent when he finally searched the computer and found Stanley’s contraband.

. Given the district court’s explicit conclusion in support of its denial of Stanley’s motion to suppress, Stanley’s objection to our consideration of the doctrine of apparent authority is not well-taken.